IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN FLYNN, JAMES BOLAND, GERALD O'MALLEY, KEN LAMBERT, GERARD SCARANO, H. J. BRAMLETT, EUGENE GEORGE, PAUL SONGER, WILLIAM MCCONNELL, MATTHEW AQUILINE, GREGORY R. HESS, MICHAEL SCHMERBECK, VINCENT DELAZZERO, and BENJAMIN CAPP, as Trustees of, and on behalf of, the BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND, <br>   620 F Street, N.W. <br>   Washington, DC  20004 <br>   (202) 783-3788, <br><br> JOHN FLYNN, JAMES BOLAND, GERALD O'MALLEY, EUGENE GEORGE, MATTHEW AQUILINE, MICHAEL SCHMERBECK, GREGORY HESS, and PAUL J. SONGER, as Trustees of, and on behalf of, the BRICKLAYERS AND ALLIED CRAFTWORKERS INTERNATIONAL HEALTH FUND, <br>   620 F Street, N.W. <br>   Washington, DC 20004 <br>   (202) 783-3788, <br><br>   and <br><br> JIM ALLEN, MATTHEW AQUILINE, LON BEST, JAMES BOLAND, TED CHAMP, RAYMOND CHAPMAN, VINCENT DELAZZERO, BRUCE DEXTER, JOHN FLYNN, EUGENE GEORGE, GREGORY HESS, FRED KINATEDER, DAN KWIATKOWSKI, KEN LAMBERT, SANTO LANZAFAME, DICK LAUBER, WILLIAM MCCONNELL, EDWARD NAVARRO, GERALD O'MALLEY, JOHN PHILLIPS, CHARLES RASO, MARK ROSE, KEVIN RYAN, GERARD SCARANO, MICHAEL SCHMERBECK, PAUL SONGER, JOSEPH SPERANZA, and FRED VAUTOUR as Trustees of, and on behalf of, the INTERNATIONAL MASONRY INSTITUTE, <br>   620 F Street, N.W. <br>   Washington, DC  20004 <br>   (202) 783-3788, <br><br>                          Plaintiffs, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   Civil Action No. |

2392042.01

v.                                                    )
                                                 )
EXTREME GRANITE, INC.                                 )
   c/o Rodney Pobar, Agent for Service of Process   )
   46717 Sundance Trail                           )
   Parker, CO  80138,                             )
                                                 )
           Defendant.                           )
                                                 )

## COMPLAINT

Plaintiffs, by their attorneys, DICKSTEIN SHAPIRO LLP, complaining of the Defendant, allege as follows:

### CAUSE OF ACTION
### Jurisdiction and Venue

1.    This is an action brought by the fiduciaries of the Bricklayers & Trowel Trades International Pension Fund ("IPF" or "Fund"), the fiduciaries of the Bricklayers and Allied Craftworkers International Health fund ("IHF"), and the fiduciaries of the International Masonry Institute ("IMI") to enforce the terms of the Plan and Trust Agreements adopted by the IPF, IHF and IMI, and the provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  This action arises under the laws of the United States, specifically Section 502(a)(3), 502(g)(2), and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3), 1132(g)(2), 1145.  Pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), jurisdiction is therefore conferred on this Court as to the claims brought on behalf of the IPF, IHF, and IMI.

2.    The IPF, IHF and IMI are administered in the District of Columbia.  Venue for the claims asserted by the IPF, IHF and IMI is conferred on this Court pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), which provides:

> (2) Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or

2

may be found, and process may be served in any other district where a defendant resides or may be found.

## Parties

3.      Plaintiffs, John Flynn, James Boland, Gerald O'Malley, Ken Lambert, Gerard Scarano, H. J. Bramlett, Eugene George, Paul Songer, William McConnell, Matthew Aquiline, Gregory R. Hess, Michael Schmerbeck, Vincent DeLazzero and Benjamin Capp, are Trustees of, and sue on behalf of, the IPF. The IPF is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). The IPF trustees bring this action on behalf of, and for the benefit of, the beneficiaries of the IPF in their respective capacities as fiduciaries.

4.      The IPF also is authorized to effect collections on behalf of the IHF and IMI, pursuant to a written Assignment of Claims and the Collection Procedures of the Central Collection Unit of the Bricklayers and Allied Craftworkers ("Collection Procedures").

5.      Plaintiffs, John Flynn, James Boland, Gerald O'Malley, Eugene George, Matthew Aquiline, Michael Schmerbeck, Gregory Hess, and Paul J. Songer are Trustees of, and sue on behalf of, the IHF. The IHF is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). The IHF trustees bring this action on behalf of, and for the benefit of, the beneficiaries of the IHF in their respective capacities as fiduciaries.

6.      Plaintiffs, Jim Allen, Matthew Aquiline, Lon Best, James Boland, Ted Champ, Raymond Chapman, Vincent Delazzero, Bruce Dexter, John Flynn, Eugene George, Gregory Hess, Fred Kinateder, Dan Kwiatkowski, Ken Lambert, Santo Lanzafame, Dick Lauber, William McConnell, Edward Navarro, Gerald O'Malley, John Phillips, Charles Raso, Mark Rose, Kevin Ryan, Gerard Scarano, Michael Schmerbeck, Paul Songer, Joseph Speranza and Fred Vautour, are Trustees of, and sue on behalf of the IMI. The IMI is an "employee benefit

plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). The IMI trustees bring this action on behalf of, and for the benefit of, the beneficiaries of the IMI in their respective capacities as fiduciaries.

7.     Defendant, Extreme Granite, Inc. ("Extreme Granite" or "Defendant") is, and at all times hereinafter mentioned was, a company maintaining offices and conducting business in the state of Colorado.

8. Defendant employs or has employed members of the International Union of Bricklayers and Allied Craftsmen and its affiliated local unions ("Union").

## Violation Charged

9.     Extreme Granite acting through its authorized agents or officers, executed collective bargaining agreements with the Union.  Those collective bargaining agreements are annexed hereto as Exhibits A and B and are hereinafter referred to as the "Agreements."

10.     Pursuant to the Agreements, Defendant agreed to make certain payments to the IPF, IMI and/or IHF for covered work performed by employees of Defendant.

11.     Having submitted some contributions, Defendant has demonstrated an awareness of the obligation to make those payments.

12.     Upon information and belief, Defendant has failed to properly submit reports and contributions for work performed pursuant to the Agreements.

2392042.01

13.     Accordingly, Plaintiffs seek to conduct an audit of Defendant's books and records in order to determine any amounts which may be owed for work covered by the Agreements.

14.     Under the terms of the Plan and Trust Agreement adopted by the IPF Board of Trustees, the CCU Procedures, and Supreme Court precedent, Plaintiffs are entitled to conduct an audit of the books and records of Defendant to determine whether contributions have been made in compliance with Defendant's obligations.

15.     Under the terms of the Plan and Trust Agreement adopted by the IPF Board of Trustees, Plaintiffs are entitled to recover any delinquent contributions found due by the audit, as well as interest, calculated at 15 per cent per annum, and the greater of either liquidated damages, calculated at 20 percent, or an additional computation of interest, on the aforementioned delinquent contributions.

16.     Despite several requests by the IPF, or a representative of the IPF, for access to Defendant's books and records so that the IPF auditor can determine whether contributions have been made in compliance with Defendant's obligations, Defendant has failed to grant the IPF auditor such access to its books and records.

17.     Plaintiffs have, therefore, been forced to estimate the amounts due the IPF, IHF, and IMI by Defendant.

18.     Upon information and belief, Defendant's employees performed 850 hours of work in the jurisdiction of Local Union 3 Idaho/Washington/Montana ("Local 3 ID/WA/MT") during the months of April and May 2007 covered by the Agreements, but Defendant failed to submit related reports and contributions.

2392042.01

19.     Accordingly, Plaintiffs multiplied the number of hours believed worked (850) by the applicable hourly contribution rates and estimated that Defendant has failed to pay the IPF and IMI $892.50 in contributions for work performed in Local 3 ID/WA/MT during the months of April and May 2007.

20.     Under the terms of the Plan and Trust Agreements adopted by the IPF and IMI, interest in the amount of $89.87, calculated at the rate of 15 percent per annum from the Due Date through February 15, 2008, and liquidated damages in the amount of $178.50, at the rate of 20 percent have been assessed on such delinquent contributions estimated due the IPF and IMI for work performed in Local 3 ID/WA/MT during the months of April and May 2007.

21.     In July 2007, Defendant submitted check No. 1787 to the IPF in payment of contributions due for work performed in May 2007 by Defendant's employees in the jurisdiction of Local Union 7 Colorado ("Local 7 CO"), covered by the Agreements. However, Defendant's check was returned to the IPF by the bank because there were insufficient funds in Defendant's bank account. Despite requests from Plaintiffs, Defendant has failed to replace this check. Accordingly, Defendant owes Plaintiffs $4,022.96 in contributions for work performed in Local 7 CO during the month of May 2007.

22.     Under the terms of the Plan and Trust Agreements adopted by the IPF, IHF and IMI, interest in the amount of $405.06, calculated at the rate of 15 percent per annum from the Due Date through February 15, 2008, and liquidated damages in the amount of $804.60, at the rate of 20 percent have been assessed on such delinquent contributions for work performed in Local 7 CO during the month of May 2007.

23.     In addition, Defendants have failed to submit required reports and contributions for any work performed in the jurisdiction of Local 7 CO pursuant to the

2392042.01

Agreements during the months of July 2007 through January 2008. Accordingly, Plaintiffs have been forced to estimate the amount of contributions due for such work.

24.    Plaintiffs calculated the average number of hours (403) reported by Defendant as worked in Local 7 CO during the months of April, May and June 2007, multiplied that number of hours by the applicable hourly contribution rates for the months of July 2007 through January 2008, and estimated that Defendant owes the Plaintiffs $17,211.68 in delinquent contributions for work performed in Local 7 CO during the months of July 2007 through January 2008.

25.    Under the terms of the Plan and Trust Agreements adopted by the IPF, IHF, and IMI, interest in the amount of $650.52, calculated at the rate of 15 percent per annum from the Due Date through February 15, 2008, and liquidated damages in the amount of $2,930.46, at the rate of 20 percent have been assessed on such estimated delinquent contributions due for work performed in Local 7 CO during the months of July 2007 through January 2008.

26.    Plaintiffs have brought this action in faithful performance of the fiduciary duties imposed upon them under Section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1). Plaintiffs have been, and are, incurring additional attorney's fees as a direct result of Defendant's failure to make contributions in accordance with the terms and conditions of the Agreements.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1.    For an order directing Defendant Extreme Granite, Inc. to turn over to Plaintiffs' auditor its books and records for the time period May 2005 through the present including, but not limited to, payroll records and the general ledger(s). Plaintiffs will suffer irreparable injury in the absence of such injunctive relief and there is no adequate remedy at law.

7

2392042.01

Plaintiffs seek an order granting them:

    a.  Preliminary injunctive relief and

    b.  Permanent injunctive relief.

2.  For an amount not less than $27,536.14, which is constituted as follows:

    a.  For known and estimated delinquent contributions in the amount of $22,127.13 payable to the IPF, IMI and/or IHF for the months May 2007, and January 2007 through January 2008, plus any and all additional amounts found to be due and owing through the date of judgment (ERISA Section 502(g)(2)(A); Collection Procedures);

    b.  For interest in the amount of $1,145.45 assessed on such delinquent contributions, calculated at 15 percent per annum from the Due Date through February 15, 2008 (ERISA Section 502(g)(2)(B); Collection Procedures);

    c.  For liquidated damages in the amount of $3,913.56, assessed on such delinquent contributions, calculated at the rate of 15 percent per annum from the Due Date through February 15, 2008 (ERISA Section 502(g)(2)(C)(i); Collection Procedures);

    d.  For the costs of filing this action in the amount of $350.00 (ERISA Section 502(g)(2)(D)).

3.  For any additional amounts determined owed the IPF, IMI and/or IHF by Defendant, which are not yet ascertainable until an audit is conducted.

4.  In the amount of Five Thousand Dollars ($5,000.00), and such additional amounts as may be incurred, representing attorney's fees and costs of this action (ERISA Section 502(g)(2)(D)).

2392042.01

5.  That Defendant be directed to comply with its obligations to submit all required reports and to make all contributions due and owing to the IPF, IMI and/or IHF and to pay the costs and disbursements of this action.

6.  Such other relief as this Court deems appropriate, including judgment for any contributions and interest thereon that may accrue subsequent to the filing of this Complaint, as well as any resulting statutory damages thereon under ERISA.

Dated:  February _25_ , 2008            By: _____
                                        Ira R. Mitzner, DC Bar No. 184564
                                        Charles V. Mehler III, DC Bar No. 475909
                                        DICKSTEIN SHAPIRO LLP
                                        1825 Eye Street, NW
                                        Washington, DC  20006
                                        (202) 420-2200

                                        Attorneys for Plaintiffs

2392042.01

Exhibit A

CO 0514

5/2/2005

# COLLECTIVE BARGAINING AGREEMENT

## BY AND BETWEEN

# COLORADO TILE CONTRACTORS

### AND

### INTERNATIONAL UNION OF BRICKLAYERS & ALLIED CRAFTWORKERS LOCAL 7 COLORADO
#### AFL-CIO

### BRICKLAYERS AND ALLIED CRAFTWORKERS
### FORMER LOCAL 6 COLORADO
#### AFL-CIO



RECEIVED
APR 29 2005
COLLECTIVE BARGAINING SERVICES

### MAY 1, 2005– APRIL 30, 2008

CO 0514

|  |  | PAGE |
|---|---|---|
| PREAMBLE |  | 2 |
| ARTICLE I | BARGAINING UNIT-RECOGNITION | 2 |
| ARTICLE II | QUALIFICATION OF PARTIES | 2 |
| ARTICLE III | UNION SECURITY | 4 |
| ARTICLE IV | WORKING HOURS AND OVERTIME | 10 |
| ARTICLE V | WAGES | 11 |
| ARTICLE VI | TRAVEL PAY AND SUBSISTENCE | 12 |
| ARTICLE VII | FRINGE BENEFITS | 13 |
| ARTICLE VIII | GRIEVANCE PROCEDURES | 15 |
| ARTICLE IX | NO STRICK, NO LOCK | 16 |
| ARTICLE X | DUES CHECKOFF | 17 |
| ARTICLE XI | GENERAL OBLIGATION | 17 |
| ARTICLE XII | NON DISCRIMINATION | 18 |
| ARTICLE XIII | DURATION OF AGREEMENT | 19 |

SCHEDULE OF NEW WAGES AND BENEFIT FUND RATES

1

CO 0514

## COLLECTIVE BARGAINING AGREEMENT

### INTRODUCTION

THIS CONTRACT, made and entered into as of this 1st day of May, 2005, by and between Local Union No. 7 of Colorado, International Union of Bricklayers and Allied Craftworkers (Tile Layers, Marble Masons, Terrazzo Workers and Marble and Terrazzo Finishers Local No. 7), Denver, Colorado (hereinafter called "Union"), and Employers in the tile, marble and terrazzo industry doing business in the geographical area within the jurisdiction of the Union, (hereinafter call the "Employer").

The territory covered by this Agreement is the state of Colorado.


## I. BARGAINING UNIT - RECOGNITION

1.1     Inasmuch as the Union has submitted proof and the Employer is satisfied that the Union represents a majority of its employees in the bargaining unit described herein, the Employer recognizes the Union, pursuant to Section 9(a) of the National Labor Relations Act, as the exclusive collective bargaining agent for all employees within that bargaining unit, on all present and future job sites within the jurisdiction of the Union, unless and until such time as the Union loses its status as the employee's exclusive representative as a result of an NLRB election requested by the employees. The Employer agrees that it will not request an NLRB election.

1.2     The Union recognizes that those employers that are signatory to Collective Bargaining Agreements with Local No. 7 are the only qualified union shops in the area and agree that its men will not work for any employer doing work within the jurisdiction of the Union that is not signatory to a Union agreement.

1.3     Any current national agreements (except illegal provisions thereof, if any) between National Tile, Marble, and Terrazzo Contractors Association and the International Union of Bricklayers and Allied Craftworkers to which Employer is signatory are made a part of this Agreement by this reference.

1.4     If there are differences or conflicts between the terms and provisions of this Agreement and the National agreement to which Employer is signatory which cannot be resolved by the mutual agreement of the parties hereto, the terms and provisions of this Agreement shall prevail.


## II. QUALIFICATIONS OF PARTIES

2.1     To qualify as an Employer under this Agreement, the contractor shall:

      A.     Have a business telephone listed in the firm name of the Employer.

CO 0514

B.    Provide workmen's compensation insurance immediately and unemployment compensation insurance within seven (7) days under the provisions of the Colorado Workmen's Compensation Act and the Colorado Employment Security Act, and said insurance to be provided regardless of the number of employees in the employment of the Employer.

2.2    No self-employed employer or contractor shall be allowed to employ or use the services of any other self-employed employer or contractor unless he shall report and pay directly to the funds all fringe benefits for each hour worked by such employee.

2.3    No employee shall contract for the performance of any work within the scope of this Agreement.

2.4    When there is complaint of faulty or inferior workmanship, the Employer shall immediately inform the Business Agent who with the Employer will determine responsibility for the complaint. If responsibility is not settled, the complaint will be referred to the Union. Thereupon the Union representative shall either inspect the installation or request a committee to inspect the installation. Any committee so appointed shall be composed of a Union representatives and Employer representatives and thereafter such committee shall endeavor to promptly settle and determine the validity of the complaint of faulty or inferior workmanship, and to establish the identity of the person or persons who are responsible for such faulty or inferior workmanship. If the committee is unable because of deadlock or otherwise to make any such determination, the matter shall be submitted to arbitration as hereinafter provided in **Article IX.**

2.5    When faulty or inferior workmanship is acknowledged or is established as determined by the Union-Employer committee or as determined by arbitration, the employee or employees, if any, who shall have been determined to have been responsible for such faulty or inferior workmanship shall be required to repair or replace the same without cost to the Employer for any labor of such responsible employee or employees in repairing or replacing the same.

2.6    Subcontracting.

A.    All subletting, assigning or transferring by the Employer of any work in connection with employment covered by this Agreement must be subcontracted, assigned or transferred to a person, firm or corporation which recognizes the Bricklayers and Allied Craftworkers or one of its Local Unions as the collective bargaining representative of its employees and agrees that all such work shall be done under the terms of this Agreement. A violation of this provision will be deemed a breach of this Agreement.

B.    All charges of violations of this Article shall be considered as a dispute, and shall be processed in accordance with the provisions of Article VIII of this Agreement covering the procedure for handling of grievance and the final and binding resolution of disputes.

2.7    Management Recognition and Rights

3

# CO 0514

The Union hereby recognizes and acknowledges that job site discipline is the responsibility of the Employer. Except as otherwise provided herein, the Employer shall have the right to hire, fire, suspend or discipline for just cause, direct the working force, and to manage its business in accordance with its best judgement.

2.8    With reference to paragraph 7.2:

In acknowledgement of Employer contribution to the Union pension plan, Union employees waive any rights or claims to participation in any individual Employer Pension or Profit Sharing Plans. This section shall have no effect on employees presently covered by individual pension or profit sharing plans.

## III. UNION SECURITY

3.1    Each worker performing work covered by this Agreement shall become a member of the Union within eight (8) calendar days after commencement of his employment, and shall, as a condition for employment continue as a member in good standing in the Union for the duration of this Agreement. Continuation of membership in good standing means the tender of periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership in the Union.

3.2    No person shall have the right to interfere with or talk to a workman, except that during working hours both of the duly accredited representatives of the Employer and the Union may talk to such workman. The Superintendent shall be the agent of the Employer, and when a superintendent is not employed on a building and the work is in charge of a working foreman, then the Foreman also shall be the agent of the Employer. The agent of the Union shall be any accredited representative thereof.

3.3    Work covered by this Agreement: tile layers' work shall consist of but not be limited to the following work procedures and installation of the following materials:

A.    The complete installation of all tile and tile substitutes.

B.    The laying, cutting or setting of all tile.

C.    The application of a coat or coats of mortar prepared to proper tolerance to receive tile in both the wet and the dry set methods.

D.    The setting of all tile in mortar, asphalt, and/or sand.

E.    The setting of all tile by the adhesion method with organic and/or inorganic thin-bed-bonding materials.

F.    The installation of accessories and the insertion of decorative tile inserts in other materials.

4

**CO 0514**

G.    The setting, sealing, caulking and installation of prefabricated tile systems; and, in those areas where the tile finisher employees are represented by the BAC, the tile finishers' work shall consist of: the carrying out of such work assignments as may be given by his tile layer supervisor to assist the mechanic in the performance of his duties and such other work as outlined below:

1.    Tile Finishers:  Shall mix all mortar, do all cleaning, washing and grouting of all tile set by the tile layer and handle all sand, cement, lime, tile and other materials and all other chemicals that may be used in tile installation by the tile layer or similar workers, after being delivered on the job.

2.    Marble Finishers:  Shall mix all mortar, do all cleaning, washing, grouting and pointing up of all marble installed by the marble setter or similar workers and handle all sand, cement, marble or stone and any and all materials that may be used by the marble setter or similar workers, after being delivered on the job.

3.    Terrazzo Finishers:  Shall mix all mortar, wheel all concrete or mix (if ready mix company is used), shall handle sand, cement, lime, marble, chips, terrazzo, and all other materials that may be used for terrazzo-mosaic work after being delivered on the job, and shall help the terrazzo workers in the installation of all cement terrazzo, magnesite terrazzo and all other substitutes that may be applied by the terrazzo workers, including epoxy floor, rustic, rough washed or exposed aggregate, by using snips for strip cutting, laying strips, rolling and the use of the wood float, under the supervision of the terrazzo worker (mechanic).  The grinding, rubbing, cleaning, scrubbing and waxing of all terrazzo floor, base and wainscoting, by hand or machine, shall be done by the terrazzo finishers (grinders).

4. General Laborer.  Realizing the competitive nature of the Colorado tile, marble and terrazzo market, the employer may utilize the service of a general laborer whose duties do not include those delineated in the Collective Bargaining Agreement for setters and finishers.  The duties of a general laborer shall be limited to the handling of raw materials and general cleanup.  The employer may pay the general laborer such wages as deemed appropriate and the general laborer shall not be required to become a member of the union for a period of six months from the first date of hire for any signatory Local 7 employer.

Following the six-month initial employment period, the general laborer shall be advanced to the stage 1 probationary finisher classification and shall be required to become a member of the union.

If the general laborer is found to be doing work covered by the duties of finishers or setters, within the first one hundred and twenty (120) calendar days following his or her hire as a general laborer, the general laborer shall be immediately advanced to the position of Probationary Finisher Stage 1 and the employer shall commence paying all applicable fringe benefits on his or her behalf on the 121st calendar day following initial employment as a general laborer.

5

CO 0514

If 120 calendar days have passed since initial employment as a general laborer and if the general laborer is found to be doing work covered by the duties of finisher or setter, the general laborer shall be immediately advanced to the position of Probationary Finisher Stage 1 and the employer shall commence paying applicable fringe benefits from the date the violation of this provision is found to have occurred.

The employer shall assume the responsibility for tracking the appropriate timelines when choosing to employ a general laborer.

H.    Probationary period:    There shall be a two (2) year probationary period for new finishers and the employment of these new finishers.  Rates of pay shall be as shown in the Schedule of New Wages and Benefit Fund Rates.

1.    No fringe benefits will be paid on probationary finishers for the first one hundred and twenty (120) calendar days.  After 120 calendar days, all fringe benefits will be paid with the following exception

The contribution rate for Bricklayers and Trowel Trades International Pension Fund shall be $0.25 per hour for the two-year period following the probationary finisher's most recent initiation date.  The employer shall be responsible for requesting the appropriate initiation date for each employee and the union shall be responsible for providing an accurate list of initiation dates for those union employees for whom the employer makes such a request. Requests shall be made in writing or by Fax to the Local 7 office at the time of hire.

2.    All travel time, mileage and subsistence allowance, high pay and parking fees shall be paid in accordance with this Agreement.

A probationary period of ninety (90) days shall be established for terrazzo finishers not qualified as floor machine or base and wall machine operators.

1.    During this ninety (90) day period, the rate of pay for these floor machine operators shall be at the rate of finishers pay.  After the ninety (90) day probationary period has been worked, then these workers shall receive the full rate of pay for floor machine operators.

2.    During this ninety (90) day period, the rate of pay for these base and wall machine operators shall be at the rate of pay for floor machine operators.  After the ninety (90) day probationary period, the rate of pay for these base and wall machine operators shall be the full rate for base and wall machine operators.

3.    All travel time, mileage and subsistence allowance, fringe benefits and all other payments shall be paid in accordance with this Agreement.

This Article shall not apply to work performed under Davis-Bacon predetermined rates on federal aid projects.

6

CO 0514

3.4     Product Definition. Tile is defined as the following products:

A.     All burned clay products, as used in the tile trade, either glazed or unglazed.

B.     All composition materials, glass mosaics and all substitute materials for tile made in tile-like units.

C.     All materials in tile-like forms of cement, metals, plastics and other materials, that are made for or selected for use as a finished floor surface, stair treads, promenade floors, walks, walls, ceilings, swimming pools and all other locations where tile is used to form a finished interior or exterior surface for practical use, sanitary finish or decorative purposes.

3.5     Marble Masonry. Marble masonry shall consist of but not be limited to the following work procedures and installation of the following materials:

The carving, cutting and setting of all marble, slate, granite and stone, either natural or imitation, including slate blackboards, stone, albereen, carrara, sanionyx, vitrolite, and similar opaque glass, scagliola, marbleithic, and all artificial, imitation or cast marble of whatever thickness or dimension. This shall apply to all work, such as sanitary, decorative and other purposes, both interior and exterior, of buildings of every description wherever required, including all polish, honed or sand finish; also, the cutting and fitting of above materials after they leave mills or shops, as well as all accessories in connection with such work, and the laying of all marble tile, slate tile and terrazzo tile.

3.6     Marble, Mosaic and Terrazzo Work. Marble, mosaic and terrazzo work shall consist of but not be limited to the following work procedures and installation of the following materials:

A.     The installation of marble, mosaic, venetian enamel and terrazzo; the cutting and assembling of mosaics; the casting of all terrazzo in shops on jobs; all rolling of terrazzo work.

B.     All scratch coat on walls and ceilings where mosaic and terrazzo is to be applied shall be done by mosaic and terrazzo workers.

C.     All bedding above concrete floors or walls, the preparation, cutting, laying or setting of metal, composition or wooden strips and grounds and the laying and cutting of metal, strips, lath or other reinforcement where used in mosaic and terrazzo work.

D.     All cement terrazzo, magnesite terrazzo, dex-o-tex terrazzo, epoxy matrix terrazzo, exposed aggregate, rustic or rough washed for exterior or interior of buildings placed either by machine or by hand, and any other kind of mixtures of plastics composed of chips or granules of marble, granite, blue stone, enamel, mother or pearl, quartz, ceramic colored quartz and all other kinds of chips or granules when mixed with cement, rubber, neoprene, vinyl, magnesium chloride or any other resinous or chemical substances used for seamless flooring systems, and all other binding materials when used on walls, floors, ceiling, stairs, saddles or any part of the interior or exterior of the building and also other work not considered a part of

7

CO 0514

the building such as fountains, swimming pools, etc.; also all other substitutes that may take the place of terrazzo work. The terrazzo worker shall have the right to use all tools which are necessary in the performance of his work.

E.    Cutting and assembling of art ceramic and glass mosaic comes under the jurisdiction of the mosaic workers and the setting of same shall be done by tile layers.

F.    The finishing of cement floors where additional aggregate of stone is added by spreading or sprinkling on top of the finished base and troweled or rolled into the finish and then the surface ground by grinding machines shall come under the jurisdiction of the terrazzo workers. When no additional stone aggregate is added to the finished mixture, even though the surface my be ground, the work shall come under the jurisdiction of the cement finishers.

3.7    Work Assignment. The Employers agree to assign to tile layer, marble masons, and terrazzo workers employees represented by Local No. 7 of Colorado, International Union of Bricklayers and Allied Craftworkers all work described in Sections 3.3, 3.5, and 3.6, and in addition, such other new methods or types of work which may be mutually agreed upon between the parties to this Agreement in the future

3.8    Key Employees.  The Employer shall have the right to send from one Union's jurisdiction to another, one tile layer and one tile finisher; and the Employer agrees when hiring additional employees to give preference to tile layers and tile finishers residing or normally employed in the job site area, provided such resident journeymen and finishers are available within a reasonable time following request by said Employer; provided further that if qualified area residents are not available, the Employer may transfer other employees into the area; and provided further that any tile layer or tile finisher sent by an Employer to an area where the wage/fringe benefit rates are in excess of the total rate in his home area, he shall be paid the higher job site area wage/fringe benefit rate.

3.9    Work outside the Collective Bargaining Agreement.  Local No. 7 and the Employer agree that any employment, including such employment by covered employees or Employer which is done outside of the terms of this Agreement is detrimental to the employment stability and established standards and relationships within the Union sector of the tile industry.  Local No. 7 therefore, pledges to work at the national and local levels to eliminate such practices ensuring that all parties to similar agreement abide by the full terms and conditions of this document.  Especially egregious are the following practices;

   a) Quitting a signatory employer to work for a non-signatory employer doing work covered by this collective bargaining agreement.

   b) Moonlighting for a non-signatory employer as defined above while employed by a signatory employer.

   c) Refusing employment with a signatory employer while working for a non-signatory employer as defined above.

8

## CO 0514

Therefore, employees who are brought before a trial committee of Local 7 and who are convicted of one or more of the above violations shall, in addition to the penalties provided for by the Local 7 and International Union Constitution and By-Laws, be excluded from the requirement that his or her signatory employer make fringe benefit contributions on his or her behalf for a period of ninety (90) calendar days following the employee's conviction and appeal. In the event the employee is no longer working for a signatory employer, the ninety (90) calendar day exclusion requiring fringe benefit contributions may be imposed upon the employee's return to covered employment.

The employer assumes the responsibility for tracking the ninety (90) calendar day exclusion period and the union shall notify the employer in writing or by fax in the event of such trial and conviction. The employee shall retain all rights of appeal as provided for by the Local 7 and I.U. Constitution and By-Laws.

3.10    Traveling Contractors. When the Employer has any work specified in Article III of this Agreement to be performed outside of the area covered by this Agreement and within the area covered by an Agreement with another affiliate of the International Union of Bricklayers and Allied Craftworkers, the Employer agrees to abide by the full terms and conditions of the Agreement in effect in the job site area. Employees covered by this Agreement who are sent to projects outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in the Schedule of New Wages and Benefit Fund Rates of this Article, but in no case less than the established minimum wage scale of the local agreement covering the territory in which such work is being performed plus all contributions specified in the job site local agreement. If employees are sent to work on a project in an area where there is no local agreement covering the work specified in Article III of this Agreement, the full terms and conditions of this Agreement shall apply.

3.11 Shop work. All work performed in the shop such as fabrication, etc., shall not be subject to the terms of this Agreement.

3.12    (a)    The Union agrees that when Employer request employees, the Union will make its best effort to provide skilled craftsmen within a forty-eight (48) consecutive hour period. The Union agrees that Employer has the right to establish the standards to be used in hiring employees covered by this Agreement and that the Employer shall be the sole judge of any applicant's qualifications.

(b)    Whenever the Union is unable to provide two skilled craftsmen within the forty-eight hour period, the Employer has the right to hire from any available source. If the Employer hires an employee who is not now a member of the Union, the following provisions shall apply.

(1)    For a period of sixty (60) calendar days from the date of employment, the Employer shall not be required to pay any fringe benefits on behalf of the 3.12 employee, and the dues and initiation fees required under Article 3.1 shall be deferred.

9

CO 0514

(2)     Following the initial sixty (60) calendar days, the employer shall begin making fringe benefit contributions on behalf of the 3.12 employee with the following exception. The Bricklayers and Trowel Trades International Pension Fund contribution rate for the new employee defined in 3.12 (b) shall be $0.25 per hour for the two-year period following the employee's most recent initiation date.

(3)     If the employee refuses to tender his Union initiation fees and dues as required, he shall be terminated by the Employer upon written request of the Union.

(4)     Whenever such an employee is employed by the Employer, the Employer shall notify the Union in writing of the name and social security number of such employee within two (2) working days of the commencement of his employment. If the Employer fails to provide the written notice to the Union within the two (2) working days, Section 3.12 shall not apply.

3.13    The Employer may request an employee by name when the employee has previously worked for the Employer.

## IV. WORKING HOURS AND OVERTIME

4.1     The standard workday and workweek shall consist of either five (5) consecutive days at eight (8) hours per shift or four (4) consecutive days at ten (10) hours per shift, Monday through Friday. Regular work hours will be between 6:00 a.m. and 6:00 p.m. In the event the Employer is unable to work and the work performed is less than thirty-two (32) straight time hours during the scheduled workweek due to conditions beyond the reasonable control of the employer, Saturday may be utilized as a make-up day; and all hours on Saturday up to forty (40) straight time hours in the workweek shall be paid at the straight time rate of pay and all hours worked over forty (40) straight time hours shall be paid at time and one-half (1-1/2) the straight time hourly rate. In the event the Employer implements a shift consisting of four, ten-hour days, it is understood that Friday/Saturday will then become the make-up day as prescribed above. The Employer may establish a shift consisting of four, ten-hour days at any time when considered necessary. The Employer may implement Saturday work whenever required by the Contractor, or by conditions beyond the reasonable control of the employer, or by agreement with the business representative of the Union.

All overtime hours worked in excess of eight (8) per shift on the five (5) day, eight (8) hour shift, or in excess of ten (10) hours per shift on the four (4) day, ten (10) hour shift shall be paid at time and one-half (1-1/2) the straight time hourly rate. In the event the employer is required by job conditions to work more than eight hours on an eight-hour shift, the first two hours of overtime may be worked at the straight time rate of pay. The intent of this exception is to provide relief in special circumstances caused by unforeseen job conditions and is not intended to be used on a routine basis. All time worked over forty (40) straight time hours per

10

**CO 0514**

week shall be paid at time and one-half (1-1/2) the straight time hourly rate Monday through Saturday. It shall not be cause for disciplinary action or discharge should an employee refuse to work a make-up day or Saturday.

4.2    Business closed for remodeling during a time frame which includes Sunday, such Sundays will be at the rate of time and one-half, if approved by the Business Agent. Sundays and holidays which are the Fourth of July, Labor Day, Decoration Day, Thanksgiving, Christmas Day, and New Year's Day - overtime shall be paid at the rate of double time. When a holiday falls on Saturday or Sunday, the contractor may specify whether Friday or Monday will be observed. When a designated holiday falls during the regular work week of Monday through Friday, time and one half overtime pay provisions covered in 4.1 shall begin after thirty-two hours worked if the holiday is not worked.

4.3    Coffee break. Employees will take a fifteen minute coffee break at 10:00 a.m. or as near to this time as practical.

4.4    Shift time. Except as stated in 4.1 above, shift time will be approved only on those projects that are operating businesses that cannot be closed during the hours of 8:00 a.m.. and 4:30 p.m. Work on shift time jobs will be strictly on a voluntary basis, without prejudice. Shift time must be approved in advance, in writing, by an Employer and the business representative of the Union. Wages for shift time between the hours of 4:30 p.m. and 8:00 a.m.. shall be eight (8) hours pay for seven (7) hours work. This clause shall in no way be applied to new construction. The intent is for remodel work only.

## V. WAGES

5.1    The minimum straight time hourly wage rates for journeyman mechanics and finishers shall be set forth in the Schedule of New Wages and Benefit Fund Rates to this Agreement, for each hour or fraction thereof worked.

5.2    The minimum straight time hourly rate for foremen shall be not less than one dollar ($1.00) per hour above the journeyman rate. When three (3) or more journeymen are working on a job or project, one must be designated a foreman.

5.3    Journeyman B. Journeyman entering from outside the jurisdiction of Local 7 or non-union after May 1, 1994, shall receive 85% of the negotiated wage rate until upgraded to Journeyman A status by the Training Committee.

5.4    Journeyman A: Those Journeyman as of April 30, 1994, shall be classified as Journeyman A, and shall receive 100% of the negotiated wage rate commencing May 1, 1994. He or she may be down-graded to Journeyman B at 85% of negotiated wage scale on request if production and quality is not consistent with Journeyman A status. Down-grading will be considered by management, labor and co-workers.

11

CO 0514

5.5    Master Mechanic:   Those in this classification have held Journeyman classification (with Union cards) for 5 years or more and have successfully completed one year of supplemental training as prescribed by the training committee and shall receive 5% over the negotiated wage rate of Journeyman A.

5.6    Any employee under this Agreement may be re-evaluated on request if production and quality are not consistent with current classification.

5.7    High Pay.  Any journeyman performing work over thirty (30) feet from ground at low point or working from a swinging stage of scaffolding or working on an outside ledge must be protected by safety devices and shall be paid an additional two dollars ($2.00) per day.

5.8    Termination Pay.   When an employee is terminated and has to seek employment elsewhere, he will be paid immediately upon termination or receive waiting time pay.  Payday shall be at least once a week; if payday falls on a holiday, payday will be the day before.

5.9    Men ordered to report for work in the shop or at the job for whom no employment is provided shall be paid two (2) hours straight time rate, unless an act of God prevents employment.

5.10    It shall be the responsibility of the employee to provide the required hand tools and the Employer the necessary power tools for a satisfactory installation.

5.11    The Employer must have a letter on file in the Union office listing the names of all persons other than themselves, who have authorization to act in the capacity of employing and terminating workmen.

5.12    Tile or marble workers shall receive an additional $0.50 per hour when working with solvent-based epoxy materials.  Terrazzo workers shall receive an additional $0.50 per hour for all terrazzo work.  The two above mentioned provisions shall not apply to jobs of less than 16 hours duration per employee.

## VI. TRAVEL PAY AND SUBSISTENCE

6.1    Any employee employed by the Employer in the business or shop located in the City of Denver and who is required to travel to a job or project more than fifty (50) miles from the State Capitol in Denver, Colorado, and any employee of the Employer in the place of business or shop located in any other town or city and who is required to travel to a job or project more than fifty (50) miles from the State Capital in Denver, Colorado, and any employee of the Employer in the place of business or shop located in any other town or city and who is required to travel to a job or project more than fifty (50) miles from the post office of said town or city shall be paid a mileage expense of fifteen cents ($0.15)per mile from the Sate Capitol or from the post office, as the case may be, to the project site and return only one (1) time during the duration of the job or project, regardless of the duration of the job or project.  No mileage other than the one (1) round trip as described in the preceding sentence shall be paid for interim trips made by the employee on his own volition.  No mileage shall be paid to

12

CO 0514

any employee for travel to a job or project which is fifty (50) miles or less from the State Capitol or from the post office, as the case may be.

6.2    All travel time shall be at the minimum straight time rate when traveled between the hours of 8:00 a.m. and 4:30 p.m., and when traveled on Saturdays, Sundays and holidays, provided, however, that travel time shall be considered as hours worked and when the total hours worked by an employee during any weekly pay period exceed forty (40) hours per week, such employee shall be paid at the rate of time and one-half for all hours worked in excess of such forty (40) hours. Fringe benefits are to be paid on all travel hours. Employees who are owners of automobiles, motorcycles or other self-projected vehicles shall not be required to use the same to convey materials of any kind over fifty (50) pounds without receiving the additional sum of five dollars ($5.00) per day thereof. No such premium pay shall be paid if the employee uses such vehicle to convey materials of fifty (50) pounds or less. Further, no such premium shall be paid to any employee where the Employer's truck or trucks are being used to haul materials of any kind in excess of fifty (50) pounds.

6.3    By practice and custom of the industry limited only to the City and County of Denver, the Employer shall reimburse any employee covered by this Agreement for parking fees of the employee incurred in the course of performance of his work; provided that the employee furnish the parking ticket to the Employer for such reimbursement.

6.4    Employees covered under this Agreement who are required to travel to a job or project of fifty (50) miles or less from the State Capitol or from the post office, as the case may be, shall not be entitled to any subsistence allowance. Where such employees are required to travel to such job or project a distance or fifty one (51) miles to eighty (80) miles inclusive, such employees shall be paid fifteen dollars ($15.00) per day subsistence allowance for each day worked for the Employer on such project. Where such employees are required to travel to such job or project a distance of eighty-one (81) miles or over, such employees shall be paid twenty-five dollars ($25.00) per day subsistence allowance for each day worked for the Employer on such project. When actual expenses run more than the specified amount, the Employer will pay the actual expenses incurred by the employee for food and lodging, the employee must furnish receipts. When a job over 200 miles from Denver continues over a weekend and employee remain at job location, and if valid receipts are submitted, seven (7) days expenses will be paid. Employer will notify employees 24 hours in advance when they will be required to go out of town. Out of town expenses will be paid in advance when mutually agreed by the Employer and employee.

6.5    Where there is a question of mileage to a job site, the Business Agent will drive from the State Capitol to the job site using a calibrated speedometer and report to the parties concerned.

## VII.  **FRINGE BENEFITS**

7.1    There are in existence at this time the following jointly controlled trusts established in accordance with Section 302 of the Labor Management Relations Act:

Bricklayers and Trowel Trades International Pension Fund (IPF)

CO 0514

Bricklayers & Allied Craftworkers International Health Fund (IHF)
Colorado Trowel Trades Joint Apprenticeship and Training Fund

7.2    As part of the compensation for all work performed under this Agreement, and in addition to all other compensation and benefits provided for hereunder, each Employer shall report and pay fringe benefits for each hour of labor worked by each employee covered by this Agreement, to each of said trust funds, the amount indicated in the Schedule of New Wages and Benefit Fund Rates of this Agreement, subject to exceptions provided by this Agreement.

7.3    With reference to Paragraph 7.2, each hour of labor for each employee means each hour of labor worked by each employee covered by this Agreement including travel time. Each self-employed Employer or contractor and each working contractor who works with the tools of the trade as herein above provided shall pay all fringe benefit contributions on themselves at a minimum of not less than one hundred sixty (160) hours per month to the Pension Fund and one hundred forty-five (145) hours to the Health and Welfare Fund regardless of the number of hours actually worked by such self-employed Employer or contractor, or by such working contractor. Further, as to any Employer who voluntarily provides payments into the aforesaid fringe benefits funds for employees not covered by this Agreement, such as clerical an other office and full-time employees, shall be required to make such contributions on each of the such non-covered employees a minimum of not less than one hundred sixty (160) hours per month to the Pension Fund and one hundred forty five (145) hours to the Health and Welfare Fund regardless of the fact that such employees may actually work less that the stated minimum. Fringe benefit contributions, as they apply to health and welfare contributions hours only, shall be at all times 15 hours more than hour bank deductions as determined by the Trustees of the funds for employees covered by the Collective Bargaining Agreement.

7.4    All payments required by Paragraph 7.1 shall be made as directed by Trustees.

7.5    The Employer shall prepare and transmit pursuant to paragraph 7.2 a report showing the number of hours worked by each employee during the period covered by the report. The report shall be in such form as shall be prescribed by the Trustees of the funds. The report must be completed on time even if no one was working.

7.6    Payments required by paragraph 7.2 shall be deemed delinquent if not made on or before the 15th day of each month for all work performed during the payroll periods ending in the preceding month. Realizing that certain conditions outside the employer's control such as the date the monthly report is received by the employer, the vagueries of the postal delivery system, and the end processing of the reports all have an impact on the date the employer's required contributions are ultimately posted, therefore receipt of negotiable funds that bear a postmark by the 15th of the month shall be deemed proof of timely payment and shall not be deemed delinquent. It shall be the responsibility of the receiving parties to keep evidence of the postmarked envelope in which the funds and report were received. If the employer does not receive their monthly reporting form by the 10th of the month, the employer shall notify the International Pension Fund. The parties recognize and acknowledge that the regular and prompt reporting of Employer contributions to the fund is essential to the effective maintenance of this fund and that it would be extremely difficult, if not impossible, to fix the actual expense and damage to the fund which would result from the failure of any Employer to

14

CO 0514

report such monthly contributions shall be conclusively presumed to be one hundred dollars ($100.00) or ten percent (10%) of such unreported contributions, whichever is greater, for each month in which any Employer is so in default. Such liquidated damages shall become due on the day following the date on which the filing of the report becomes delinquent. This section is intended to provide for liquidated damages and not for penalties; and in no event shall the paragraph be applicable to delinquencies in payments resulting from unintentional clerical errors in the computation of amounts due. In addition, the delinquent Employer shall reimburse the fund for all expenses of collection and for all expenses of suit, including court costs and reasonable attorneys' fees incurred by the Trustees. The failure of an Employer to make any such required reports and/or contributions shall cause him to be liable to the fund.

     7.7    Failure of the Employer to comply with any provisions of paragraph 7.2 through 7.6, inclusive, shall constitute a material breach of contract. The Union may prohibit their men from working for any such Employer.

     7.8    It is agreed to by all parties that the intent regarding the welfare and pension funds is to include, in addition to the Union members, Employers and any of their employees, any and all rules or benefits under Article VII that apply to the Union members will also apply to these people.

     7.9    To secure compliance with the provisions of paragraph 7.1 through 7.8, inclusive, each Employer shall file with the Trustees of the funds a performance bond in the amount of $2,500.00 in such form as shall be prescribed by the Trustees and conditioned upon the faithful performance and discharge by the Employer of all obligations and liabilities set forth in Paragraph 7.1 through 7.8, inclusive. The bond shall be posted within sixty (60) days of signing the Collective Bargaining Agreement.

## VIII. GRIEVANCE PROCEDURES

     8.1    It is specifically agreed that any controversy arising during the effective period of this Agreement involving the application or interpretation of any of its terms and conditions shall be settled in accordance with the grievance procedure set forth in this Article. No grievance shall be recognized unless it is called to the attention of the Employer by the Union or to the attention of the Union by the Employer within five (5) working days after alleged violation is committed or should reasonably have been discovered.

     8.2    A grievance shall be resolved in accordance with the following procedures:

Step 1. The grievance shall be referred to the job site Union steward and the Employer job site representative for adjustment.

15

CO 0514

Step 2. If the grievance cannot be settled within twenty-four (24) hours pursuant to Step 1 of this procedure, the grievance shall be referred on the following working day to the Union President and to the Employer.

Step 3. If the grievance cannot be settled pursuant to Step 2 of this procedure within three working days, excluding weekends and holidays, the parties shall immediately request that the Federal Mediation and Conciliation Service furnish a list of five (5) professional arbitrators within forty-eight (48) hours. Within seventy-two (72) hours the Union and the Employer will each alternately strike one name from the list with the party requesting arbitration taking the first strike until one of the arbitrators remains. The arbitrator shall hear the grievance and render a decision within seventy-two (72) hours, which shall be final and binding on both parties.

8.3     The time limits specified in any step of the grievance procedure may be extended by mutual agreement of the parties, initiated by a written request of one party to the other, at the appropriate step of the grievance procedure. Failure to file or process a grievance within the time limits provided shall be deemed a waiver of such grievance without prejudice, but shall create no precedent in the processing of and /or resolution of like or similar grievance or disputes.

8.4     In order to encourage the resolution of disputes and grievances at Steps 1 and 2 of Section 8.2 of this grievance procedure, the parties agree that such settlement shall not be precedent-setting.

8.5     When a settlement has been reached at any step of this grievance procedure, such a settlement shall be final and binding on all parties.

8.6     It is expressly understood by the parties hereto that the procedure for adjustment of grievance set out in this Article is exclusive and supersedes any other plan, method or procedure.


## IX.  NO STRICK, NO LOCK


9.1     It is understood and mutually agreed that there shall be no strikes or lockouts over a dispute concerning this Agreement during its term until the grievance procedures described in Article VIII have been exhausted and then only in the event a party fails or refuses to abide by a final decision. This Article shall not apply in those cases where the Employer fails or refuses to make in whole or in part any payments required under this Agreement including all wages, local Union fringe benefits or other contributions that have been established through bona fide collective bargaining.

9.2     There shall be no stoppage of work on the Employer's project by the Union or any lockout by the Employer by reason of any dispute which may occur between the Union and a contractor or area contractors other than the Employer, provided that refusal by any employee to pass through a lawfully permitted picket line will not constitute a violation of this Agreement.

16

CO 0514

## X. DUES CHECKOFF

The Employer shall deduct from the wages of each employee who has signed a checkoff authorization form conforming to federal law, and transmit monthly to the Union (or to any agency designated by said Union for the collection of said money) the sum for each hour paid which the Union has specified or specifies from time to time and so advises the Employer in writing as the portion of said employee's Union dues to said Union, to the International Union or to any other affiliate of the International Union, subject to checkoff. The sums transmitted shall be accompanied by a statement, in a form specified by the Union, reporting the name of each person whose dues are being paid and the number of hours each employee has been paid.

## XI. GENERAL OBLIGATION

11.1    Both parties agree to make every effort to take affirmative action to carry out the spirit and letter of this Agreement, and to adopt no policy and take no action which is inconsistent with the spirit and letter of this Agreement.

11.2    If any signatory to an agreement with Local No. 7 or employee does not fully comply with all the terms and provisions of their Local No. 7 Agreement, and complaint thereof is made in writing by any employer or any employee to the Union, the Union shall take immediate affirmative action to correct such deficiency. If after such written notice, the Union fails to correct such deficiency within ninety (90) days of the date of such notice, then this Agreement may be deemed cancelled, null and void and signatory Employer may be immediately released from any further obligations hereunder.

11.3    The originals of all time cards shall be retained by the Employer for his own file and shall be made available for inspection by the Union representative upon reasonable request therefore.

11.4    In the case of contractors not signatory to the Collective Bargaining Agreement performing work on a federal installation in this jurisdiction, all federal contracting officers concerned will be supplied with updated copies of the existing wage and fringe benefits and requested to see that they are enforced. This will be a joint effort of both Employer and Union to have fringe benefits paid to Bricklayers and Trowel Trades International Pension Fund (IPF), Bricklayers & Allied Craftworkers International Health Fund (IHF), and Colorado Trowel Trades Joint Apprenticeship and Training Fund. Failure to respond or take action by either party will be a basis for voiding the existing contract. Any expenses will be a shared equality by both parties.

11.5    Any portion of this Agreement found to be in violation of existing federal or state laws shall become inoperative and the balance of the Agreement, as such, shall continue in full force and effect until the date of expiration.

17

CO 0514

## XII.  NON DISCRIMINATION

13.1    The Employer and the Union agree that no employee shall be discriminated against because of race, religion, color, sex, age, national origin or disability.  This provision shall be governed only by the limitations of the law regarding bona fide occupational qualifications.

13.2    The Employer and the Union are committed to equal opportunity policies.  They agree that the Employer is obligated to comply with all applicable provision of Executive Order 11246, as amended;  503 of the Rehabilitation Act of 1973, as amended;  and the Vietnam Era Veterans Readjustment Assistance Act of 1974, as amended.  The Union further agrees that it will cooperate with the Employer's compliance obligations.

あ

FROM :                          FAX NO. :3037779774            Mar. 02 2007 10:09AM P2

CO 0514
3-6-07
CCm

## XIII. DURATION OF AGREEMENT

This Agreement shall remain in full force and effect for the period beginning May 1, 2005, and ending April 30, 2008. The Agreement shall automatically be renewed for one (1) year periods from the applicable termination date stated in this paragraph, unless notice of desire to change or terminate the Agreement is given by one party to the other not less than sixty (60) days prior to the termination date.

IN WITNESS WHEREOF, the parties have caused this instrument to be executed as of May 1, 2005.

FOR THE EMPLOYER

LOCAL UNION NO. 7 OF COLORADO
INTERNATIONAL UNION OF
BRICKLAYERS AND ALLIED CRAFTWORKERS

*Extreme Granite Inc.*
COMPANY NAME OF EMPLOYER

*Patrick F. Schwarz*
Patrick F. Schwarz, President

*Rodney Pobarr    President*
NAME AND TILE



R E C E I V E D
MAR  2 2007
COLLECTIVE BARGAINING
SERVICES

19

CO 0514
5/2/2005pA

## APPRENTICE WAGES

APPRENTICES SHALL BE PAID A PROGRESSIVELY INCREASING SCHEDULE OF WAGES BASED UPON A PERCENTAGE OF THE JOURNEYMAN WAGE RATE AS FOLLOWS:

|                       | 1st 6 mos. | 2nd 6 mos. |
|-----------------------|------------|------------|
| 1st year              | 50%        | 55%        |
| 2nd year              | 65%        | 75%        |
| 3rd year              | 85%        | 95%        |

FRINGE BENEFITS SHALL NOT BE PAID ON APPRENTICES WITH NO PREVIOUS EXPERIENCE FOR THE FIRST THREE (3) CALENDAR MONTHS FROM DATE OF EMPLOYMENT, AFTER WHICH ALL FRINGE BENEFITS WILL BE PAID.  POLICY ON HIRING OF APPRENTICES WILL BE AS OUTLINED IN APPRENTICEAHIP STANDARDS.

20

Exhibit B

# AGREEMENT

### BETWEEN

# INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFT WORKERS TILE & TERRAZZO WORKERS

## LOCAL #3   ID/WA/MT

### &

# MONTANA STATE INDEPENDENT TILE, MARBLE & TERRAZZO CONTRACTORS

EFFECTIVE
JUNE 1, 2006 - MAY 31, 2011

# ARTICLE I

## PARTIES

This Agreement is entered into this 1st day of June, 2006, by and between (hereinafter referred to as the Employer), and the **INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTSWORKERS LOCAL #3, WA/ID/MT** (hereinafter referred to as the Union).

## ARTICLE II

## DURATION-TERMINATION-AMENDMENT

This Agreement shall be effective commencing 2006 and shall continue in full force to and including 2011. It shall be automatically continued yearly thereafter unless written notice of decision to negotiate a new Agreement, in whole or in part, is given by either party to the other, not later than sixty (60) days nor more than ninety (90) days prior to the expiration date or any anniversary date thereafter. The parties may at any time mutually agree to change or amend any part of this Agreement and such changes or modifications shall not affect the continuing nature of the Agreement.

## ARTICLE III

## SCOPE OF WORK

This Agreement shall cover new construction, maintenance, repair and renovation and cover all counties in the State of Montana.

A. This Agreement shall cover all work historically preformed by the Marble, Mosaic, Terrazzo, Tile-layer, Finishers, and Fabrication of Materials work falling within the jurisdiction of the Union, as defined in Branches of the Trade, Code 1 of the Constitution, Rules of Order and Codes of the International Union of Bricklayers and Allied Craft workers which is incorporated herein by reference.

## ARTICLE IV

## UNION RECOGNITION, SECURITY, ACCESS

A. The Employer agrees that if it has not previously done so, it will upon the Union's submission of evidence of majority status among its employees in the bargaining unit described herein, voluntary recognize the Union as the exclusive representative as

defined in Section 9(a) of the National Labor Relations Act, as amended, of all employees within that bargaining unit on all present and future jobsites within the jurisdiction of the Union. The Employer expressly agrees that it will not condition its recognition upon the results of an election conducted under the rules and regulations of the National Labor Relations Board.

B. The officer primarily responsible for the day to day affairs of the Union or said officer's representatives shall have access to the Employer's jobsites at reasonable times in compliance with any special rules and regulations adopted by the owner to ensure that the provisions of this Agreement are observed: provided however, that such representatives shall not unduly interfere with the job progress.

C. It shall be condition of employment that all employees of the Employer covered by this Agreement who are members of the Union in good standing on the effective date of this Agreement shall remain in good standing, and those who are not members on the effective date of this Agreement become and remain members in good standing and those who are not members on the effective date shall immediately after the eighth (8th) day following the effective date of this Agreement, become and remain members in good standing in the Union. It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its effective date shall immediately after the eighth (8th) day following the beginning of such employment, become and remain members in good standing in the Union.

D. A member in good standing shall be defined as an employee who tenders the periodic dues and initiation fees uniformly required as a condition of acquiring and retaining membership in the Union. Employees not in good standing in respect to paying the initiation fee of the periodic dues of the Union shall be discharged from their employment within forty-eight (48) hours after the Employer has received written notification of the fact from the Union.

## ARTICLE V

## HIRING PREFERENCE

A. Subject to the policies regarding traveling members established from time to time by the International Union of Bricklayers and Allied Craft workers, the Employer, when engaged in any construction work within the geographic area covered by this Agreement, shall, in hiring employees covered by this Agreement, give preference to persons residing or normally employed in the geographic area covered by this Agreement. Layoffs shall be in reverse order of hire, except when it is necessary to retain employees with certain skills in order to complete the project.

# ARTICLE VI

## APPRENTICES

A. In order to train sufficient skilled mechanics for the industry, the necessity for employment of apprentices and/or improver apprentices is recognized and encouraged by the parties to this Agreement. It is agreed that the Bureau of Apprenticeship Training (also known as - BAT) standards approved by Apprenticeship and Training Program Job Service Division, Montana Department of Labor and Industry adopted by the local Joint Apprenticeship and Training Committee are incorporated herein by reference as if fully set out.

B. No apprentice shall be hired by any Employer until both the Employer and the apprentice have been approved by the J.A.T.C. Any Employer employing journeymen and approved for training by the J.A.T.C. must secure an apprentice through the J.A.T.C. in conformity with the approved apprentice ratio goals.

C. It is the purpose and intention of the parties to this Agreement that all apprentices, improver apprentices and trainees shall receive on-the-job training and experiences in the craft of bricklaying and related crafts. The parties therefore, agree that every apprentice, improver apprentice and trainee shall spend approximately the same percentage of time commensurate with their level workweek in the actual performance of their craft. For example: a 50% apprentice, improver or trainee shall not spend less than approximately 50% of his work week in the actual performance of their craft, i.e. Stone, Tile, Marble, and Terrazzo..

# ARTICLE VII

## ADDED CONTRIBUTIONS

### Wages/Dues check-off/Vacation

A. Wages: The hourly wage rates for all employees performing work covered under this agreement shall be as specified in attached Schedule

B. "A"⬜.

B. Dues check-off: The Employer shall deduct from the wages of each employee who has signed a check-off authorization conforming to federal law and transmit monthly to the Unions (or to any agency designated by said Union for the collection of such money), the sum for each hour paid which the Union has specified, or specifies from time to time and so advised the Employer in writing, as the portion of each employee's Union dues to said Union, to its International Union, or to any other affiliate of the International Union, subject to check-off. The sums transmitted shall

be accompanied by a statement, in a form specified by the Union, reporting the name of each person whose dues are being paid and the number of hours each employee has been paid.

C. Vacation: Every Employer shall make a deduction as set forth in Schedule "A" accompanying this Agreement for each compensable hour of employment as a vacation allowance. In accordance with the rules and procedures established and agreed to by the parties to this Agreement, Employer and Local #3 for Montana. The vacation allowance shall be withheld from every employee's weekly paycheck after withholding for Federal and State Income Tax and shall be sent, together with the required reports, no later than the 15th of the month following the month of employment to the Masonry Welfare Trust Fund pursuant and subject to its Trust Agreement and plan (Portland, OR).

## Added Contributions

In addition to the wages and other payments herein provided for, Employer agrees to pay the specified contributions to the following designated funds.

A. Health and Welfare: The Employers shall contribute the sum as specified in Schedule "A" for each compensable hour of employment by each employee covered by this Agreement to the Masonry Welfare Trust Fund pursuant and subject to its Trust Agreement and plan (Portland, OR). Such contributions, together with the required reports, must be postmarked no later than the 15th day of the month following the month in which the hours were worked. It is recognized that said Trust Agreement contains provisions for conducting payroll audits of participating employers and for assessing liquidated damages, interest, attorney's fee and costs on delinquent contributions.

B. N.W. Local Pension: The Employer shall contribute the sum as specified in Schedule "A" for each compensable hour of employment by each employee covered by this agreement to Masonry Industry Trust Administration Local Pension Trust pursuant and subject to its Trust Agreement and plan (Portland, OR). Such contributions, together with the required reports, must be postmarked no later than the 15th day of the month following the month in which the hours were worked. It is recognized that said Trust Agreement contains provisions for conducting payroll audits of participating employers and for assessing liquidated damages, interest, attorney's fee and costs on delinquent contributions.

C. Bricklayer International Pension: The Employer shall contribute the sum as specified in Schedule "A" for each compensable hour of employment by each employee covered by this agreement to Bricklayers & Allied Trowel Trades International Pension Trust Fund pursuant and subject to its Trust Agreement and plan (Washington DC). Such contributions, together with the required reports, must be postmarked no later than the 15th day of the month following the month in which the hours were worked. It is recognized that said Trust Agreement contains provisions

for conducting payroll audits of participating employers and for assessing liquidated damages, interest, attorney's fee and costs on delinquent contributions.

D. <u>Bonding in the Event of Delinquency</u>: In the event the Employer becomes delinquent in making its required contributions to the Masonry Industry Trust Administration or Bricklayers Allied Trowel Trades International Pension Trust Fund, and is referred to the Thrusts Collection attorney's for action, the Employer shall be required to post a bond equal to double the required monthly benefits due.

## Apprenticeship

A. It is agreed that each Employer will contribute a sum as set forth in Schedule "A" accompanying this Agreement for each compensable hour of employment by each employee covered under this Agreement into Montana Local #3 Training Trust, or the IMI (International Masonry Institute) as specified in the Wage and Fringe Schedule.

B. The contributions as outlined in the section above, together with the required reports, shall be forwarded to the administrator or such other bank and/or administrator as may be mutually agreed upon by the Trustees. The report and payment must be postmarked by the Post Office no later than the 15th day of the month following the month in which the hours were worked.

C. In the event any Employer fails to make any of the contributions as required by this Article, such Employer shall be required to pay, in addition to the principal sum due, liquidated damages in the amount of $10.00 for each month's delinquency, or ten percent (10%) of the amount due, whichever is greater, and shall also be liable for reasonable attorney's fees and the cost of collection. Reasonable attorney's fees shall be as follows: Twenty percent (20%) or the amount due if collected prior to the suit, the filing of a lien or arbitration hearing. In addition to the remedies set forth herein, the Union shall be free (notwithstanding any expressed or implied "NO STRIKE" clause in this Agreement) to strike and picket any Employer failing to make any payment of money as required by this Article. The right to pull the employees and picket shall not be exercised within the ten-day period following the dues date of such payments., In the event the Union engages in a strike for the purpose of enforcing the Article, the Employer shall be liable for the earnings lost by his employees because of his delinquency and the strike.

D. By entering into this Agreement, the Employer adopts and agrees to be bound by the terms of the Trust Agreements establishing the Funds referred to in this Article, and agrees to be bound by all past and future lawful acts of the Trustees of each said Fund.

E. The Union, as its option, shall be permitted to divert wage increases or such sums as may be required to maintain an increase of existing fringe levels.

# ARTICLE VIII

## REGISTRATION

Each Employer, when requested, shall provide the Union with a copy of his application for contractor registration, a copy of his Contractor's bond, and shall advise the Union in writing of his Unemployment Insurance account number, Industrial account number, State Tax number and Employer Identification Number.

# ARTICLE IX

## HOURS OF WORK, OVERTIME, SHIFTS, AND HOLIDAYS

A.  Eight (8) or ten (10) hours, between 6:00 a.m. and 6:00 p.m. shall constitute a days work and four (4) or five (5) days, Monday through Friday, shall constitute a weeks work. Forty (40) hours at eight (8) or (10) hours per day. On eight (8) hour shifts employees are not required to change hours of work on a day to day basis. Make-up day on Saturday, which is voluntary, will be permitted year around at the straight time rate. There shall be no more than one make-up day per week and make-up days are not accumulative. Make-up days are for weather related time loss. Failure to work on a make-up day shall not be grounds for dismissal. Holidays will not be made up using the make-up day provision.

B.  All hours worked before 6:00 a.m. and after 6:00 p.m., of eight (8) or (10) hours duration, and all hours over eight (8) or ten (10) hour shift, Monday through Friday, shall be paid at one and one-half (1 ½) times the regular hourly scale. Saturdays shall be paid at one and one-half. On Sundays and Holidays, the rate shall be double time.

C.  Employees will be permitted two ten (10) minute breaks at approximately mid-way through the morning shift and mid-way though the afternoon shift (work station to work station). The break will be utilized for coffee time, provided that the employees do not leave the work areas and promptly resume working at the expiration of the ten (10) minute break. The foremen or the contractor may supervise this break, which may be staggered among the employees so as not to hinder job progress.

D.  Show-up time, Etc: When requested to report for work by Employer or his foreman and upon arrival no work is furnished, employee shall be paid two (2) hours pay; and if out of town, one half (½) days mileage or subsistence and (2) hours pay. Inclement weather and acts of God are the exceptions. Full subsistence shall be paid when over four (4) hours are worked, if four (4) hours or less are worked, half (½) subsistence shall be paid. No subsistence or mileage shall be paid if worker leaves of his own accord.

E. The parties to the Agreement recognize the desirability and in some cases absolute necessity of coordinating the shift to be worked with the other trades involved on the project and the customers work schedule. The schedule of approved shifts can be adopted by mutual consent of the Employer, the Employees, and Business Manager of the local union.

F. Work Code:

   1. If an Employer requires more than one shift of workers to be used for two (2) days or less, or an emergency arises, he shall receive permission from the President or Business Agent of the Union. In the event they refuse to grant permission or are unavailable or more than one (1) shift is required for more than two (2) days, the Employer shall seek such permission from the Joint Arbitration Board.

   2. When two (2) shifts are employed, working twelve (12) hours per shift, four (4) hours shall be paid at regular rates and the remainder at double time. For the midnight to noon shifts, the first eight (8) hours shall be paid at double time. In the event more than two (2) shifts are required, double time or overtime pay shall be equitable and fairly decided between the shifts. When multiple shifts are worked on Saturday, Sunday, or recognized holidays, all time shall be at double time. When multiple shifts are worked, the Employer shall provide meals and not deduct time for the meal period.

G. The following days shall be recognized as holidays: New Years, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, the Friday after Thanksgiving, and Christmas Day. Employees shift will end at 12:00 (noon) Christmas Eve Day. Memorial Day will be observed the last Monday in May. If the holiday falls on a Sunday, the following Monday shall be considered the holiday. Any holiday which falls of a Saturday shall be observed the preceding Friday. Friday proceeding a Saturday holiday may be worked at straight time when agreed by the Employer, the Employees, and permission from the Union. Permission from the Union will not be unreasonably withheld when notified three (3) days prior to the Friday.

H. There shall be no work on any of the holidays set forth in Section G except in the case of an emergency or through approval from the UNION obtained thirty-six (36) hours before the holiday. In the event work is performed on a holiday as a result of an emergency or following approval, all EMPLOYEES shall be paid two (2) times the regular hourly scale set forth in Schedules.

I. Both parties recognize that the State and the Federal Government have designated days for observance of the listed holidays different from those dates the holidays have been traditionally observed. Both parties agree to observe the holidays listed in this Article, Section G, on the dates designated by the State and Federal Government. There will be only one day observed for holidays, either the day of, or the day before or the day after a holiday. Any EMPLOYEE shall notify EMPLOYER FOREMAN

one (1) week in advance of day(s) to be taken off, except for in the case of emergency.

# ARTICLE X

## WORKING RULES

A. Every EMPLOYER working in this jurisdiction shall hire a reasonable percentage of Craft workers at not less than 50% of the Masons excluding the Foreman on all projects when local members are available. If the UNION cannot provide the required manpower, the EMPLOYER can bring in the required work force from another jurisdiction. If during the course of the project, manpower does become available to the UNION, the EMPLOYER will not be required to lay off or send back any of his EMPLOYEES brought in without prior approval of the EMPLOYER, EMPLOYEE, or the UNION. Mandatory replacement will not be required.

B. EMPLOYERS and EMPLOYEES covered by this AGREEMENT shall strive for workmanship on the job, which will reflect quality and efficiency and be a credit to the Masonry Industry. It is agreed that quality workmanship will encourage the perpetuation of the use of masonry construction by architects, engineers, general contractors, and owners and therefore any EMPLOYER or EMPLOYEE who repeatedly performs inferior workmanship or violates the building codes covering masonry construction may be held in violation of this AGREEMENT and subject to action by the Joint Arbitration Board.

C. Where possible and reasonable, all Employees must furnish a suitable shed or room on the jobsite where employees listed above can keep their tools and eat their lunches. In cold weather a stove and fuel or equivalent must be provided in order to properly heat it.

D. Hauling with a car or truck shall not be considered necessary as a condition of employment.

E. When cutting saws are in use, the Contractors shall furnish goggles or eye protectors.

F. No Finisher shall be allowed to work on any job doing any work belonging to the Mechanic excepting grout and cleaning unless accompanied by a Mechanic.

G. Where employees are exposed to foul and low-pressure conditions, the best air controlled mechanical devises shall be furnished by the Employer and maintained by said Employer.

H. There shall be no time lost by the building of scaffold or stocking up on same during working hours.

I.  All working Foreman Mechanics shall be practical mechanics. When more than two Mechanics are employed; one of them shall act as working foremen and receive working Foremen's wages for same. All working Foremen will be required to have at least one (1) apprentice where there are five (5) Mechanics working.

J.  Mortarboard stands shall be used whenever practical.

K.  Any working Foremen shall receive instructions pertaining to his work from none other than his Employer or a General Superintendent. A Foremen of any other craft is not to be considered.

L.  No Employee shall contract masonry work covered by this classification schedule nor, may he work for any person or persons not duly authorized by the Union as Contractors. Any person doing so will be subject to disciplinary action by the Arbitration Board.

M.  Rubber gloves and suits will be furnished for Terrazzo Workers where working conditions require it to keep workers reasonably dry.

N.  A Terrazzo Worker will direct and assist in all grouting work to be done under the jurisdiction of his craft.

O.  The Employer shall provide all power tools necessary to complete the job.

P.  FINISHERS ONLY,

 1.  The work of a finish helper shall consist of any treatment of tile, marble, or terrazzo after installation and all preparation prior to installation such as help with the bedding, cutting, polishing or installation of ties and wire lath.

 2.  The work of a Helper shall consist of mixing grout, truck material to the immediate vicinity of the mechanic of the trade involved and cleaning up job site.

 3.  It is expressly agreed that in the event a Helper should do the work of a Finish Helper for any part of a shift, he shall receive the wage rate of a Finish Helper for that full shift.

## ARTICLE XI

## SAFETY

PREAMBLE: Employer and the Employees shall take all reasonable necessary safety precautions to their work and work performance, including compliance with all applicable laws, ordinances, regulations, and orders issued by public authority whether Federal, State, local OSHA, or other and any safety measure required for the project

including ergonomics. The Employer and the Employees shall at all times be responsible for providing a safe job site and shall be responsible for the work performances and safety of all personnel, equipment and materials within their care, custody or control. The Employer shall furnish certain safety equipment for the work and the Employees shall wear personal protection equipment in compliance with applicable OSHA requirements and Employer's safety rules. Employees shall promptly provide Employer with notice of any safety hazards or violations found anywhere on the job site, and any injury which occurs on the job site.

A. When employees are required to use tile saws, eye and ear protections along with OSHA approved respirators will be furnished by the Employer.

## ARTICLE XII

## GRIEVANCE PROCEDURE

A. The parties to this Agreement shall establish a Joint Arbitration Board consisting of two (2) representatives selected by the Employer and two (2) representatives selected by the Local Union, to resolve disputes over the interpretation and application of this Agreement. It is further agreed that should occasion require any alterations or amendments to this Agreement, the party desiring such alterations or amendment shall at a session, shall have an equal number of votes on all matters coming before the Joint Arbitration Board, regardless of the number of Employer or Union representatives present at a session.

B. It is specifically agreed that any controversy arising out of this Agreement involving the interpretation of its terms and conditions, shall be settled in accordance with the grievance procedure set forth in this Article. No grievance shall be recognized unless it is called to the attention of the Employer by the Union or the Union by the Employer within five (5) days after the alleged violation is committed or discovered.

C. Grievance shall be handled in the following manner:

  1. The grievance shall be referred to the jobsite Union Steward and to the jobsite Employers Representative for adjustment.

  2. If the grievance cannot be settled pursuant to paragraph 1 of this Section, the grievance shall be referred on the following day to the officer primarily responsible for the day to day affairs of the Union or said designee and the Employer.

  3. If the grievance cannot be settled pursuant to paragraph 2 of this Section within three (3) working days excluding weekends and holidays, the grievance shall be submitted within forty-eight (48) hours to the Joint Arbitration Board for consideration and settlement.

4.  If the Joint Arbitration Board cannot reach a satisfactory settlement within five (5) working days, not including weekends and holidays, following a referral of the grievance to the Board, it shall immediately select an impartial arbitrator to review with the Board all evidence submitted relating to the dispute and then cast the deciding vote. If the Joint Arbitration Board cannot agree on an impartial arbitrator, the impartial arbitrator shall be selected from a panel of arbitrators submitted by, and in accordance with the rules and regulation of the Federal Mediation and Conciliation Service. All expenses of the impartial party shall be borne equally by the Employer and the Union. The decision reached by the Joint Arbitration Board with the assistance of the impartial arbitrator shall be final and binding upon all parties.

D.  When settlement has been reached at any step of this Grievance Procedure, such a settlement shall be final and binding on all parties, provided, however, that in order to encourage the resolution of disputes and grievances at Steps 1 and 2 of Section C of this Article, the parties agree that such settlements shall not be precedent setting.

E.  The time limits specified in any steps of the Grievance Procedure may be extended by mutual agreement of the parties initiated by the written request of one party to the other, at the appropriate step of the Grievance Procedure. However, failure to process a grievance, or failure to respond within the time limits provided above, without a written request for an extension of time, shall be deemed a waiver of such grievance without prejudice, and shall create no precedent in the processing of and/or resolution of like or similar grievance or disputes.

# ARTICLE XIII

## PRESERVATION OF WORK

A.  In order to protect and preserve, for the employees covered by this Agreement, all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: If and when the Employer shall perform any work of the type covered by this Agreement at the site of a construction project, under its own name or under the name of another, as a corporation, company, partnership, or any other business entity, including a joint venture, wherein the Employer ( including its officers, directors, owners, partners or stockholders) exercises either directly or indirectly (such as through family members) and significant degree of ownership, management or control, the terms and conditions of the Agreement shall be applicable to all such work.

B.  All charges of violations of Section A of this Article shall be considered as a dispute under this Agreement and shall be processed in accordance with the procedures for the handling of grievances and the final binding resolution of disputes, as provided in Article XII of this Agreement. As a remedy for violations of this Section, the

arbitrator (or arbitration body) provided for in Article XII is empowered, at the request of the Union, to require an Employer to (1) pay to affected employees covered by this Agreement, including registered applicants for employment, the equivalent of wages lost by such employees as result of the violations, and (2) pay into the affected joint trust funds established under this Agreement any delinquent contributions to such fund, which have resulted from the violations, including such interest as may be prescribed by the trustees or by law. Provision for this remedy herein does not make such remedy the exclusive remedy available to the Union for violation of this Section: nor does it make the same or other remedies unavailable to the Union for violations of other sections or articles of this Agreement.

C. If, as a result of violation of this Article, it is necessary for the Union and/or the Trustees of the Joint Trust Funds to institute court action to enforce and award rendered in accordance with Section B above, or to defend an action, which seeks to vacate such award, the Employer shall pay accountants☐ and attorneys fees incurred by the Union and/or the fund trustees, plus costs of the litigation, which have resulted from the bringing of such court action.

## ARTICLE XIV

## NO-STRIKE/NO-LOCKOUT

It is understood and mutually agreed that there shall be no strikes or lockouts over a dispute concerning this Agreement during its term until the grievance procedures described in Article XII have been exhausted and then only in the event a party fails or refuses to abide by a final decision. This Article shall not apply in those cases where an Employer fails or refuses to make in whole or on part any payments required under this Agreement including all wages, local union fringe benefits or other contributions that have been established through bona fid collective bargaining.

## ARTICLE XV

## SUBCONTRACTING

A. The Employer agrees not to sublet, assign or transfer any work covered by this Agreement to be performed at the site of a construction project to any person, firm or corporation, except where the subcontractor subscribes and agrees in writing to be bound by the full terms of this Agreement and complies with all the terms and conditions of this Agreement.

B. All charges of violation of this Article shall be considered as a dispute and shall be processed in accordance with the provision of this Agreement covering the procedures for the handling of disputes and the final and binding arbitration of disputes.

## ARTICLE XVI

## FORMAN AND STEWARD

A. Craft foreman must be a practical mechanic in the branch of trade being worked at and in good standing in the Union. When a man reports for work, the Foreman shall direct him to the Steward of the job. The Foreman, together with the Steward, will assist in the care of a workman who may be injured on the job.

B. All work done by members of this Union must be laid out or supervised by the Foreman of the craft.

C. A steward shall be either elected by members on the job or appointed by the Business Representative. The steward shall not be discriminated against for the performance of his duties nor shall he be discharged except for the reduction of the work force or for just cause, with said cause to be reported in writing to the Union if requested in writing.

D. The steward shall not in any way obligate the Union of Business Agent in any matter of policy, interpretation of labor relations, or agreements. Such matters shall be referred to the Business Representative.

## ARTICLE XVII

## WAGES AND ENFORCEMENT

A. On the specified pay day, every EMPLOYEE shall receive his pay thirty (30) minutes prior to the end of the work shift. The EMPLOYER shall not hold back more than five days pay and all EMPLOYERLIS must pay cash or negotiable payroll check with an ATTACHED WITHHOLDING STATEMENT.

B. In the event an EMPLOYEE is fired for cause, they shall be paid in full within twenty four (24) hours of termination; the EMPLOYEE can choose to pick up their final paycheck at the project site, main office or request it to be mailed. Checks mailed will be postmarked within twenty four (24) hours of termination.

C. Any Employee who is laid off from any job shall be paid within twenty four (24) hours of termination. The Employee can choose to pick up their final paycheck at the project site, main office or request their check be mailed. Checks mailed will be postmarked within twenty four (24) hours of termination.

D. For all time the Employees pay is withheld beyond that specified above, the EMPLOYEE shall be paid waiting time at the rate of straight time. This clause shall not apply if an EMPLOYEE quits. They will be paid on the regular pay day.

E. If the EMPLOYER desires special privileges of the ARTICLE they shall make application to the UNION in writing, stating what concessions they wish and the reason for same. Any such applications for special privileges granted by the UNION shall be active only for the time and period stated.

F. In the event the EMPLOYER fails to make any wage payments, the UNION may enforce this ARTICLE through the settlement of disputes. JOINT ARBITRATION BOARD (Article XVII in this Agreement) and may file a legal action in its own name or in the name of the EMPLOYEE or EMPLOYEES involved. In the event it is necessary for the UNION to retain an attorney to enforce this ARTICLE, the EMPLOYER shall pay reasonable attorneys fees incurred in the collection of moneys due, including the bringing of an action-at-law. In addition, the EMPLOYEE by himself/herself or through the UNION shall have the right to use any remedy set forth in the revised statutes or any other applicable Montana State Laws for the collection of wages.

## ARTICLE XIII XVIII

## WORK OUTSIDE OF JURISDICTION

A. An EMPLOYEE engaged in masonry work in another Local Unions jurisdiction shall register their jobs before starting to work with the Local Union in that work area.

B. In the event the EMPLOYER takes or sends any of their EMPLOYEES into another Local Unions jurisdiction covered by this Agreement, such EMPLOYEE shall receive the higher rate of pay or better working conditions as specified in the Agreement, or in the prevailing agreement in the area where the work is performed and in all events the EMPLOYER shall pay the hourly contributions to the Trusts as specified in this Agreement on such EMPLOYEES.

C. The EMPLOYER shall, when engaged in Tile, Marble, Mosaic, Terrazzo, Finishers, and Fabrication of Materials work in another jurisdiction, comply with all of the lawful clauses of the Agreement in effect in such other Local Unions jurisdictions provided there shall be no dual payment of Trust Fund contributions.

## ARTICLE XIX

## SEPARABILITY AND SAVING PROVISION

It is the intent of the parties hereto to abide by all applicable Federal and State statues and rules and regulations made pursuant thereto. If any provision of this Agreement is held invalid by any court or governmental agency having jurisdiction or if compliance with or enforcement of any provision of this Agreement is restrained by such tribunal pending a final determination as to its validity, then such provision or provisions shall continue in

effect only to the extent permitted and all other provision of this Agreement shall remain in force and effect. In the event that any provision of this Agreement is held invalid, or enforcement of or compliance with any provision is restrained, the Union and the Employer shall enter into immediate collective bargaining negotiations for the purpose of arriving at a mutually satisfactory replacement, incorporating the substance of such provision to the extent allowable under the law, to be in effect during the period of invalidity or restraint.

## ARTICLE XX

## GENERAL UNDERSTANDING

The Union agrees to cooperate with the Employer in meeting conditions peculiar to the job in which it may be engaged. It will at all times meet and confer with the Employer, and similarly, the Employer will at all times meet with the Union regarding any questions or misunderstandings that may arise under the performance of this Agreement.

This Agreement constitutes the entire agreement between the parties, and any local or area practices or working rules, which may be in conflict with the provisions contained in this Agreement. It shall be subordinated to this Agreement.

# ARTICLE XXI

## TRAVEL, SUBSISTENCE ANS SPECIALTY PAY

A. All travel and subsistence allowances will be reimbursed per Schedule "A".

B. Full subsistence shall be paid when four (4) hours or over are worked per day, if less than four (4) hours ½ subsistence will be paid. One half (½) subsistence shall be paid if employee requests partial day off.

C. Employees must be paid for going from one job to another during working hours and must not use any of their coffee breaks or lunch period in making such change.

We, the undersigned Employer on behalf of the parent firm, all subsidiaries and corporate related firms, companies and/or corporations hereby become signatory to the Agreement and agree to abide by the full terms and conditions of this Agreement effective as of this date.

Signed this_____ day of _____,200_

**FOR THE EMPLOYER**         **FOR THE UNION**

_____      _____
Name                         Business Manager
                                    International Union of BAC
                                    Local Union No._____

_____
Address

_____
City and State Zip Code

_____
Phone

By_____
     Name and Title

# ARTICLE XXI

## TRAVEL, SUBSISTENCE AND SPECIALTY PAY

A.  All travel and subsistence allowances will be reimbursed per Schedule "A".

B.  Full subsistence shall be paid when four (4) hours or over are worked per day, if less than four (4) hours ½ subsistence will be paid.  One half (½) subsistence shall be paid if employee requests partial day off.

C.  Employees must be paid for going from one job to another during working hours and must not use any of their coffee breaks or lunch period in making such change.

We, the undersigned Employer on behalf of the parent firm, all subsidiaries and corporate related firms, companies and/or corporations hereby become signatory to the Agreement and agree to abide by the full terms and conditions of this Agreement effective as of this date.

Signed this ___23 rd___ day of ___May___, 2007

**FOR THE EMPLOYER**  **FOR THE UNION**

___Extreme Granite INC___
Name  (COMPANY)

___Field Agent___
Business Manager
International Union of BAC
Local 3 WA/ID/MT ___5/23/07___

___794 Ventura St. Unit D___
Address

___Aurora Colo 80138___
City and State Zip Code

___303 341 9050___
Phone

By ___Rodney Bogne Pres.___
Name and Title

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| JOHN FLYNN, et al. | EXTREME GRANITE, INC. |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    11001 <br> (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____ <br> (IN U.S. PLAINTIFF CASES ONLY) <br> NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Ira R. Mitzner (202) 420-2200 <br> Dickstein Shapiro LLP <br> 1825 Eye Street, N.W. <br> Washington, DC 20006 | |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

● 3 Federal Question
(U.S. Government Not a Party)

○ 2 U.S. Government Defendant

○ 4 Diversity
(Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**    OR    ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ◉ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☒ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
ERISA - Complaint filed for recovery of delinquent contributions - 29 U.S.C. Sections 1002, 1132, 1145

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ [_____] JURY DEMAND: | Check YES only if demanded in complaint<br>YES ☐  NO ☒ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE 2/25/08     SIGNATURE OF ATTORNEY OF RECORD _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.