## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JOHN FLYNN *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 08-0324 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 7 |
| | : | | |
| EXTREME GRANITE, INC., | : | | |
| | : | | |
| Defendant. | : | | |

## <u>MEMORANDUM OPINION</u>

### GRANTING THE PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

### I.  INTRODUCTION

This matter is before the court on the plaintiffs' motion for entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). The plaintiffs are the fiduciaries of the Bricklayers and Trowel Trades International Pension Fund, the Bricklayers and Allied Craftworkers International Health Fund and the International Masonry Institute, which are "employee benefit plans" and "multiemployer plans" within the meaning of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002 *et seq.* The plaintiffs commenced this action on February 25, 2008, alleging that the defendant failed to make contributions to the employee benefit plans as required by ERISA and the applicable collective bargaining agreements. The plaintiffs served the defendant with a copy of the complaint on June 5, 2008, and to date the defendant has not responded to the complaint. Therefore, the court grants the plaintiffs' motion for default judgment and awards them $41,316.97 in damages. Additionally, the court grants the plaintiffs' request for injunctive relief requiring the defendant to grant the plaintiffs access to the defendant's books and records for the purpose of conducting

an audit.

## II. FACTUAL & PROCEDURAL BACKGROUND

On February 25, 2008, the plaintiffs initiated this action to recover delinquent contributions to the employee benefit plans and to seek access to the defendant's books and records. Compl. ¶¶ 27-28.[1] Because the defendant repeatedly failed to provide the plaintiffs' representatives with access to its records, the plaintiffs estimated the amount of these delinquent contributions based on the number of hours worked by the defendant's unionized employees. *Id.* ¶¶ 17-19, 23-34.[2] The plaintiffs also seek interest on the estimated delinquent contributions, damages, attorney's fees and costs. *Id.* ¶¶ 28-32.

The plaintiffs assert that representatives of the International Union of Bricklayers and Allied Craftsmen and its affiliated local unions entered into a series of collective bargaining agreements with the defendant, which the defendant violated by failing to provide reports, make monthly payments to the employee benefit plans and allow the plaintiffs access to its records. *Id.* ¶¶ 9-12. The plaintiffs also contend that the defendant's failure to comply with the collective bargaining agreements violates ERISA. *Id.* ¶ 1.

The plaintiffs served the defendant with the complaint and summons on June 5, 2008.

---

[1] The complaint renumbers the paragraphs listed in their prayer for relief. *See generally* Compl. This Memorandum Opinion will refer to the paragraphs in that section as if they were numbered sequentially with the rest of the document.

[2] In the complaint, the plaintiffs state that they estimated the outstanding amounts by multiplying the hourly contribution rates specified in the collective bargaining agreements by the number of hours the defendant's employees worked. *Id.* ¶¶ 18-19. In cases in which the plaintiffs could not ascertain the number of hours worked in a given month, the plaintiffs estimated those hours by calculating the average number of hours worked in the three preceding months. *Id.* ¶ 24.

*See generally* Compl. Upon the plaintiffs' request, the Clerk of the Court entered default on February 4, 2009. Pls.' Mot., Ex. C. Consistent with Federal Rule of Civil Procedure 55,[3] the plaintiffs then filed the instant motion on May 6, 2009.[4] Pls.' Mot. at 3. Throughout this period, the defendant has not pleaded or otherwise defended itself against this action.

### III.  ANALYSIS

#### A.  Legal Standard for Entry of Default Judgment Under Rule 55(b)(2)

A court has the power to enter default judgment when a defendant fails to defend its case appropriately or otherwise engages in dilatory tactics. *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980). Rule 55(a) of the Federal Rules of Civil Procedure provides for entry of default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." FED. R. CIV. P. 55(a). Upon request of the party entitled to default, Rule 55(b)(2) authorizes the court to enter against the defendant a default judgment for the amount claimed and costs. *Id.* 55(b)(2).

Because courts strongly favor resolution of disputes on their merits, and because "it

---

[3]  Federal Rule of Civil Procedure 55 specifies a two-step process for a party seeking to obtain a default judgment. First, the plaintiff must request that the Clerk of the Court enter a default against the party who has "failed to plead or otherwise defend" against an action. FED. R. CIV. P. 55(a). Second, if the plaintiff's claim is not for a "sum certain," the party must apply to the court for an entry of default judgment. *Id.* 55(b)(2). This two-step process gives a defendant an opportunity to move to set aside a default before the court enters judgment. *Id.* at 55(c); *see also H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970) (stating that "[t]he notice requirement contained in Rule 55(b)(2) is . . . a device intended to protect those parties who, although delaying in a formal sense by failing to file pleadings . . . have otherwise indicated to the moving party a clear purpose to defend the suit").

[4]  Although not required to do so under Federal Rule of Civil Procedure 55(b)(2), the plaintiffs served the defendant with a copy of the instant motion. Pls.' Mot., Ex. B ("Mitzner Decl.") ¶ 2.

seems inherently unfair" to use the court's power to enter judgment as a penalty for filing delays, modern courts do not favor default judgments. *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980). Accordingly, default judgment usually is available "only when the adversary process has been halted because of an essentially unresponsive party . . . [as] the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights." *Id*. at 836 (quoting *H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).

Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint. *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001); *Avianca, Inc. v. Corriea*, 1992 WL 102999, at *1 (D.D.C. Apr. 13, 1992); *see also Brock v. Unique Racquetball & Health Clubs, Inc.*, 786 F.2d 61, 65 (2d Cir. 1986) (noting that "default concludes the liability phase of the trial"). Default does not, however, establish liability for the amount of damage that the plaintiff claims. *Shepherd v. Am. Broad. Cos., Inc.*, 862 F. Supp. 486, 491 (D.D.C. 1994), *vacated on other grounds*, 62 F.3d 1469 (D.C. Cir. 1995). Instead, "unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Adkins*, 180 F. Supp. 2d at 17; *see also Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (stating that the court must conduct an inquiry to ascertain the amount of damages with reasonable certainty). The court has considerable latitude in determining the amount of damages. *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 4 (1st Cir. 1993). To fix the amount, the court may conduct a hearing. FED. R. CIV. P. 55(b)(2). The court is not required to do so, however, "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping*

*Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997).

## B. The Court Grants the Plaintiffs' Motion for Entry of Default Judgment

### 1. The Defendant is Liable to the Plaintiffs

The plaintiffs assert that default judgment is appropriate in the instant case given the defendant's failure to respond to the complaint or otherwise defend itself against this action. Pls.' Mot. at 2. As previously noted, the plaintiffs served the defendant with a copy of the complaint on June 5, 2008. *Id.* Having concluded that the defendant failed to plead or otherwise defend itself against the action, the Clerk of the Court entered default on February 4, 2009, pursuant to Federal Rule of Civil Procedure 55. *Id.*, Ex. C. Since that time, the defendant has not responded to either the initial complaint or the instant motion, despite being served with copies of both documents. Pls.' Mot., Ex. C at 2. Given the defendant's failure to respond, the entry of default judgment is appropriate. *See, e.g.*, *H. F. Livermore Corp.*, 432 F.2d at 691 (holding that default judgment is appropriate when "the adversary process has been halted because of an essentially unresponsive party").

The defendant's default constitutes an admission of liability for the well-pleaded allegations in the complaint. *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002); *see also Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994); *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971), *rev'd on other grounds,* 403 U.S. 363 (1973). ERISA requires that "[e]very employer who is obligated to make contributions to a multiemployer plan . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. The plaintiffs allege that the defendant failed to file periodic reports and make contributions to the employee benefit

plans as required by the parties' collective bargaining agreements. Compl. ¶¶ 9-12. Further, the plaintiffs contend that – despite their repeated requests – the defendant refused to allow the plaintiffs' representatives access to the company's books and records as required by the same collective bargaining agreements. *Id.* ¶¶ 14, 16. Accordingly, the court deems these well-pleaded allegations admitted, and must now determine the appropriate relief.

### 2. The Plaintiffs Are Entitled to Monetary Relief in the Amount of $41,316.97

The plaintiffs claim that the defendant's failure to make the required contributions to the employee benefit plans entitles them to a total of $41,316.97 in monetary relief. Pls.' Mot. at 1. Specifically, the plaintiffs request: (1) $22,123.56 in delinquent or estimated delinquent contributions from the period between May 2007 and January 2008; (2) $4,874.28 in interest payable on the delinquent contributions, calculated at a rate of fifteen percent per annum through March 31, 2009; (3) an additional $4,874.28 in interest calculated in the same manner; (4) $350.00 in filing fees; (5) $272.85 representing the process server's fee; and (6) $8,822.00 in attorney's fees. Pls.' Mot., Ex. B ("Mitzner Decl.").

Unless the amount of damages is certain, the court must make an independent determination of the amount to be awarded. *See Pope v. United States*, 323 U.S. 1, 12 (1944); *Transatlantic Marine Claims Agency*, 109 F.3d at 111; *Adkins*, 180 F. Supp. 2d at 17. ERISA provides that, in an action brought by a fiduciary of an employee benefit plan under 29 U.S.C. § 1145, the court shall award the plan:

>    (A) the unpaid contributions,
>    (B) interest on the unpaid contributions,
>    (C) an amount equal to the greater of –
>        (i) interest on the unpaid contributions, or
>        (ii) liquidated damages provided for under the plan in an amount not in

>   excess of 20 percent . . . of the amount determined by the court in subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

In light of the defendant's failure to provide periodic reports or allow the plaintiffs access to the defendant's books and records, the court accepts the plaintiffs' estimation of delinquent contributions as both reasonable and as accurate as possible under the circumstances. *See Greater St. Louis Constr. Laborers Welfare Fund v. D & H Concrete, Inc.*, 2008 WL 2437419, at *2 (E.D. Mo. June 12, 2008) (allowing an ERISA plaintiff to estimate the amount of delinquent contributions owed given that the defendant failed to provide information necessary to make a more precise determination); *R.W. Amrine Drywall Co.*, 239 F. Supp. 2d at 31-32 (granting the plaintiff's request for damages based in part on estimates of money owed); *Combs v. Coal & Mineral Mgmt. Servs., Inc.*, 105 F.R.D. 472, 474 (D.D.C. 1984) (stating that "[i]f the dollar amount of the defendant's liability is a matter of estimation . . . entry of default judgment for that amount may only be entered by the Court after a factual evaluation"); *cf. Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 52-54 (2d Cir. 1993) (remanding the case to the district court to give a defendant in a contested proceeding another chance to dispute the amount of damages, when the plaintiff based its allegations of damages on "speculative" estimates). Therefore, the court awards the plaintiffs $22,123.56 in unpaid contributions.

Further, after making an independent determination of the interest due on these unpaid contributions, the court grants the plaintiffs' request for interest in the amount of $4,874.28. Pls.' Mot., Ex. A ("Stupar Decl.") ¶ 18. Pursuant to 29 U.S.C. § 1132(g)(2)(C), the court also

grants the plaintiffs' request for an additional award of $4,874.28 in interest. *See* 29 U.S.C. § 1132(g)(2)(C) (stating that a successful plaintiff is entitled to an additional award in the amount of the interest on the unpaid contributions if that amount is greater than the liquidated damages provided for in the plan). Additionally, the plaintiffs are entitled to recover their filing fees and service costs in the amounts of $350.00 and $272.85, respectively. *See id.* § 1132(g)(2)(D).

Finally, the court concludes that the plaintiffs' request for $8,822.00 in attorney's fees is reasonable based on the itemized billing schedule provided by the plaintiffs' counsel. *See generally* Mitzner Decl. In total, the court awards the plaintiffs monetary relief in the amount of $41,316.97.

### 3. The Plaintiffs Are Entitled to Injunctive Relief

The plaintiffs also seek injunctive relief in the form of a court order directing the defendant to submit its books and records, covering the time period between May 2005 and the present, to the plaintiffs' representatives. Compl. ¶ 27. Specifically, the plaintiffs request access to the defendant's payroll records and general ledgers. *Id.*

ERISA authorizes the court to grant "other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E). Under ERISA, plan administrators have the right to enforce a provision of a collective bargaining agreement that permits the administrator to conduct an audit of a participating employer's books. *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 581 (1985); *see also Int'l Painters & Allied Trades Union & Indus. Pension Fund v. J.L. Pierce Painting, Inc.*, 2006 WL 1071535, at *2 (D.D.C. Apr. 21, 2006) (granting the plaintiff access to an employer's books and records under 29 U.S.C. § 1132(g)(2)(E)).

The collective bargaining agreements in this case set forth the defendant's obligation to provide monthly reports showing the number of hours worked by its employees. Compl., Ex. A § 7.5; *id.*, Ex. B Art. VII. The collective bargaining agreements also allow the plaintiffs to conduct audits of the employer's records. Compl., Ex. A § 11.3; *id.*, Ex. B Art. VII. Accordingly, the court grants the plaintiffs' request for access to the defendant's records for the purposes of conducting an audit.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the plaintiffs' motion for default judgment. The defendant shall pay $41,316.97 representing unpaid contributions, interest, damages, costs and attorney's fees. The defendant shall also provide the plaintiffs with access to the defendant's books and records to the extent necessary to conduct an audit for the period between May 2005 and the date of this Memorandum Opinion. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 3rd day of December, 2009.

RICARDO M. URBINA
United States District Judge